UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SANDRA LYNN KARNES,

Plaintiff,

v.

COUNTY OF SAN DIEGO, and DOES 1-50 inclusive,

Defendants.

Case No.: 14cv2548-JAH (AGS)

**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS AND TO STRIKE, [DOC. NO. 38]; (2) GRANTING IN PART AND DENYING IN PART DEFENDANT JOHN SERRA, M.D.'S MOTION TO DISMISS AND TO STRIKE, [DOC. NO. 40]; AND (3) GRANTING DEFENDANT MONTESDEOCA, ORTEGA, AND ROJA'S JOINT MOTION TO DISMISS AND TO STRIKE, [DOC. NO. 43]**

## INTRODUCTION

Pending before the Court are three motions to dismiss, and three motions to strike portions of Plaintiff Sandra Lynn Karnes's ("Plaintiff") First Amended Complaint ("FAC"), pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f). *See* Doc. Nos. 38 (Defendant County of San Diego's motion to dismiss and to strike portions of the FAC), 40 (Defendant John Serra, M.D.'s motion to dismiss and to strike portions of the FAC), and 43 (Defendant

Lisa Montesdeoca, Ruth Ortega, and Deputy Freedom Roja's joint motion to dismiss and to strike portions of the FAC). Each motion has been fully briefed by the parties. *See* Doc. Nos. 46, 48, 49. After careful consideration of the pleadings, relevant exhibits, and for the reasons set forth below, the Court (1) **GRANTS IN PART AND DENIES IN PART** Defendant County of San Diego's ("County") motion to dismiss and to strike; and (2) **GRANTS IN PART AND DENIES IN PART** Defendant John Serra, M.D.'s ("Dr. Serra") motion to dismiss and to strike; and (3) **GRANTS** Defendant Montesdeoca ("Montesdeoca"), Ortega ("Ortega") and Roja's ("Rojas") joint motion to dismiss and to strike.

**BACKGROUND**[1]

**I. Factual Background**

On March 12, 2014, while incarcerated at the Las Colinas Detention Facility, Plaintiff was injured during an altercation with another inmate, Danielle Guerra. *See* Doc. No. 36 at ¶ 23. Prior to the altercation, Plaintiff was not involved in any incidents, and Plaintiff did not inform jail personnel that she had any personal safety concerns. *Id*. at ¶ 29.

On the morning of the altercation, duty staff noticed that Plaintiff appeared to have black eyes and facial swelling, and escorted her to medical for examination. *Id*. at ¶ 27. When deputy staff questioned Plaintiff about her injuries, Plaintiff repeatedly asserted, on several occasions, that they were inflicted accidentally when a door swung open and hit her in the face. *Id.* at ¶¶ 24, 25, 31, 33. Plaintiff gave this same explanation—that she was injured by a door—to her examining physician. *Id*. at ¶ 27. Plaintiff adamantly denied that she was involved in a fight. *Id*. at ¶ 25. And, at least twice, Plaintiff insisted she was comfortable in her assigned dormitory; stating "[i]'ve been there [in dorm three] the whole time I have been here. I am fine." *Id*. at ¶¶ 25, 32. When asked if she told any deputy that

[1] The following is taken from the pleadings and is not to be construed as findings of fact by the Court.

she was injured, Plaintiff responded "No." *Id.* at ¶ 31. When asked why she did not ask to go to medical (due to her appearance), Plaintiff denied needing medical care, explaining that "[i]t looks worse than it is, I'm fine thank you." *Id.* According to the FAC, Plaintiff never self-presented for medical care, and never self-reported that she was threatened or assaulted by another inmate. *See generally id*.

When Plaintiff was examined by medical staff, on the morning of March 12, 2014, she had visible signs of facial bruising around her eyes (so-called, "raccoon eyes"), and some nasal bridge swelling. *Id*. at ¶ 36. On examination, Plaintiff denied feeling pain, denied difficulty breathing, denied losing consciousness, denied vomiting, and reported that she incurred the injury when she hit a door the day prior. *Id*.

On the same date, in the afternoon, jail medical staff again examined Plaintiff. *Id*. Plaintiff again reported that she hit her nose against a door. Examiners found no symptoms of a concussion. *Id*. at ¶ 37.

On the same date, in the evening, Plaintiff was seen by another physician who also ordered x-rays of Plaintiff's head. *Id*. at ¶ at 38. The x-rays were negative for orbital fracture, but suggestive of a small fracture of the nasal bone. *Id*. at ¶ 39.

On March 13, 2014, at about 09:22, Plaintiff was medically examined again. *Id*. at 41. During the examination, Plaintiff reported nasal congestion (without nose bleeds), denied feeling pain, dizziness, or headaches. *Id*. Plaintiff's vital signs were stable, and she was not in distress. *Id*.

On March 14, 2014, during the afternoon, a deputy noticed something was wrong with Plaintiff and alerted medical staff. *Id*. at 43. Medical examiners noted that Plaintiff was vomiting, unable to get up, experiencing problems moving her eyes, and problems with her mental status. *Id*. at ¶ 43. Examining physicians called for paramedics within ninety-five minutes of noting Plaintiff's condition, and Plaintiff was evacuated to UCSD Medical Center by ambulance. *Id*. at ¶ 43, 44, 45.

At the hospital, Plaintiff was evaluated and resuscitated in the Trauma Bay per Advanced Trauma Life Support Protocol. Plaintiff's CT scan revealed a subdural

hematoma. Multiple surgeries followed; including a left decompressive craniotomy and evacuation of a subdural hemorrhage. *Id*. at ¶ 47.

On March 15, 2014, after a new CT scan revealed a reaccumulation of the left subdural hemorrhage with a worsening midline shift, Plaintiff underwent a re-evaluation of the blood clot, a left decompressive craniotomy, and an evacuation of the subdural hematoma. Plaintiff remained in the ICU until March 24, 2014. On that date, Plaintiff underwent a third operation for increased pressure on her brain and possible hemorrhaging.

## II. Procedural History

On October 26, 2014, Plaintiff filed her original Complaint for damages, asserting claims for (1) violation of 42 U.S.C. § 1983 (Failure to Protect Inmate from Harm); (2) violation of 42 U.S.C. § 1983 (Deliberate Indifference to Medical Condition); (3) Failure to Summon/Provide Immediately Necessary Medical Care; and (4) Negligence. *See* Doc. No. 1. Then, Plaintiff only named the County and the DOES 1-50 as Defendants in the case. *Id*.

On November 18, 2014, the County moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* Doc. No. 7. Plaintiff opposed the motion on January 7, 2015, and Defendant replied on January 12, 2015. *See* Doc. Nos. 8, 9. On January 13, 2015, the Court deemed the matter suitable for disposition without oral argument, and took the County's motion under submission. *See* Doc. No. 10.

On March 25, 2016, the Court issued an order granting the County's motion to dismiss, with leave to amend. *See* Doc. No. 32. Notably, the Court found, with respect to Plaintiff's claims, that:

> [N]o actual or constructive knowledge of a serious medical injury existed for which County or its employees would know plaintiff required immediate medical care.
>
> First, plaintiff reported to the paramedics that she was injured by a fellow inmate slamming a door into plaintiff's face on March 10, 2014, but she did not report the injury until March 12, 2014. Doc. No. 1 ¶ 23. Plaintiff's delay in notifying deputies

> of her injury militates against the need for immediate medical care. It is difficult for the Court to impose a duty to summon upon County when plaintiff does not report her injuries in a manner which signals a need for urgent care.
>
> Second, Las Colinas medical personnel examined plaintiff at 07:37 and 14:35 on March 12, 2014, and plaintiff denied any pain, difficulty breathing, vomiting, or any loss of consciousness. Id. at ¶ 14. According to medical reports, plaintiff did not present any clinical signs or symptoms of a concussion in any of the three exams she underwent on March 12, 2014, although she complained of "pain" in her last exam. Doc. No. 1 ¶¶ 14-16. This Court finds that the complaint does not present a factual dispute regarding whether Las Colinas provided prompt medical care after plaintiff reported her injury on March 12, 2014.
>
> Third, on March 13, 2014, plaintiff only complained of nasal congestion, but denied any nose bleeds, pain when chewing, and dizziness or headache. Doc. No. 1 ¶ 19. Plaintiff only reported pain in the region of her fractures; her vital signs were stable and she displayed no signs of acute distress. Id. Accordingly, the medical staff and deputies had no reason to know or anticipate that plaintiff could be suffering from a closed-head injury when plaintiff did not present any markers or symptoms of such injury to that point.

*See* Doc. No. 32 at 9-10. On May 30, 2016, Plaintiff timely filed her First Amended Complaint for damages, asserting claims for (1) violation of 42 U.S.C. § 1983 (Failure to Protect Inmate from Harm); (2) violation of 42 U.S.C. § 1983 (Deliberate Indifference to Medical Condition); (3) violation of 42 U.S.C. § 1983 (8th Amendment Cruel and Unusual Punishment, and *Monell* Liability Directed at the County's Medical Care Policy); (4) 42 U.S.C. § 1983 (8th Amendment Cruel and Unusual Punishment, and *Monell* Liability Directed at the County's Failure to Train); (5) Negligence; and (6) Medical Malpractice. *See generally* Doc. No. 36. Although the FAC caption does not reflect any Defendants other than the County and the DOES, Plaintiff styled her FAC to include allegations against the County and Defendants John Serra, M.D., Deputy Rojas, Ruth Ortega, and Lisa

Montesdeoca. *Id*. Specifically, Count One (Failure to Protect) is brought only against Rojas, Ortega, and Monesdeoca; Counts Two (Deliberate Indifference) and Five (Negligence) are brought only against Rojas, Ortega, Mondesdoeca, and Dr. Serra; Counts Three (Cruel and Unusual Punishment and *Monell* Liability Directed at the County's Medical Care Policy) and Four (Cruel and Unusual Punishment and *Monell* Liability Directed at the County's Failure to Train) are brought only against the County; and Count Six (Medical Malpractice) is brought only against Dr. Serra and the County. *Id*.

On June 13, 2016, the County filed a motion to dismiss, and strike case citations from, the FAC. *See* Doc. No. 38. On July 13, 2016, Dr. Serra filed his motion to dismiss, and strike immaterial matters from, the FAC. *See* Doc. No. 40. On September 15, 2016, Defendants Montesdeoca, Ortega, and Rojas filed their joint motion to dismiss, and strike case citations from, the FAC. *See* Doc. No. 43. Briefing on each motion was completed by the parties as of October 13, 2016. *See* Doc. Nos. 46, 48, 49 (addendum to the County's reply brief in support of its motion to dismiss and strike the FAC).

## DISCUSSION

Defendants County, Dr. Serra, Montesdeoca, Ortega, and Rojas, move this Court, respectively, for orders dismissing, and striking, portions of the FAC pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f). *See* Doc. Nos. 38, 40, 43.

### I. Legal Standards

#### a. Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts

that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Id*. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, a court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which a court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

//

//

**b. Motions to Strike**

A party may move to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored, unless "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *See LeDuc v. Kentucky Central Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998); *See also Colaprico v. Sun Microsystems*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

## II. Analysis

### a. Defendant County of San Diego's Motion to Dismiss, and Strike, Portions of the FAC Pursuant to Rule 12(b)(6) and 12(f)

#### i. Motion to Dismiss

At issue are FAC Counts Three, Four, Five, and Six, brought against the County. *See* Doc. No. 36. The County moves to dismiss these Counts, arguing that fatal pleading deficiencies prevent Plaintiff from stating cognizable claims against it. *See generally* Doc. No. 38. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** the County's motion to dismiss Counts Three though Six against it.

##### 1. Plaintiff's § 1983 Claims

In Counts Three and Four, Plaintiff alleges violations of 42 U.S.C. § 1983 under the Eighth Amendment's Cruel and Unusual Punishment Clause. *See* Doc. No. 36 at 22-25. Specifically, Plaintiff alleges that the County and its co-defendants, while acting under color of law, took "no serious action to monitor, evaluate, treat, or transfer" Plaintiff, and that "significant gaps" existed with respect to communicating inmate information between guards and medical staff at Las Colinas. *Id*.

Public entities, including the County of San Diego, may not be held liable under § 1983 for the acts of their employees on a *respondeat superior* theory. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) ("*Monell*"); *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995); *Tsao v. Desert Palace*, 698 F.3d 1128, 1139 (9th Cir. 2012) (extending *Monell* liability to private entities acting under color of law). Instead, as the United States Supreme Court recognized in *Monell*, plaintiffs must plausibly allege that "a deliberate policy, custom, or practice" of the County "was the 'moving force' behind the constitutional violation" suffered by Plaintiff. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007) (citing *Monell*, 436 U.S. at 694-95; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). The Ninth Circuit recognizes three ways to achieve *Monell* liability:

> As we have noted, there are three ways to meet *Monell*'s policy or custom requirement: *First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal government policy or a longstanding practice or custom which constitutes the standard operating procedure of the local government entity*. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official government policy. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*See Hopper v. City of Pasco*, 241 F.3d 1067, 1082-83 (9th Cir.) cert. denied, 534 U.S. 951, 122 S.Ct. 346, 151 L.Ed.2d 261 (2001) (citations omitted; emphasis added).

**a. Count Three: *Monell* Liability Directed at the County's Medical Care Policy**

The County moves to dismiss Count Three, as to it, contending that "Plaintiff's FAC contains no factual allegation regarding the existence of any express policy that instructed any employee to deny plaintiff medical care." *See* Doc. No. 38-1 at 11. "To the contrary," the County argues, "[P]laintiff was promptly provided medical care under the attendance of physicians." *Id*. The County further argues that the factual-allegations supplied in the

FAC are presented "[i]n but conclusory and argumentative fashion[.]"[2] *Id*. at 12. The County directs the Court's attention to Plaintiff's allegations at FAC ¶¶ 74, 75, and 77. *Id*. at 12-13. The subject allegations read as follows:

> Las Colinas's medical care policy was a moving force in Ms. KARNES' constitutional deprivations. The severity of her condition was evident in that any private emergency room doctor, when faced with Ms. KARNES' complaints, would have directed a CT scan be performed which would have revealed the true nature of her injuries. Because Las Colinas's medical care policy does not spell out a treatment plan, no 'serious' action was taken to monitor, evaluate, treat or transfer Ms. KARNES.
>
> Further, Las Colinas' medical care policy has significant gaps in how information regarding inmates is communicated between guards and medical staff.
>
> Ms. KARNES' injury was directly caused by Las Colinas's grossly inadequate medical care policy. Because she had not received a recommend [sic] course of medical treatment, and because she was not closely monitored, she did not receive the medical treatment that could have prevented such a catastrophic injury.

Doc. No. 36 at ¶¶ 74, 75, 77. Ultimately, the County argues that Count Three fails to state a claim against it because Plaintiff (1) fails to identify an express County policy responsible for causing the alleged constitutional violation; (2) fails to allege a "pattern of findings of similar constitutional violations" required to establish municipal liability for a deliberately indifferent custom or program; and (3) does not allege that a policy-making official personally directed the behavior of any of the Defendants in this case. *See* Doc. No. 38-1 at 13 (citing *Canton*, 489 U.S. at 407-08).

---

[2] Because the Court ultimately dismisses Count Three without prejudice, for failure to allege plausible facts sufficiently supporting the § 1983 violation asserted, the Court need not address the County's alternative theories for dismissal.

In opposition, Plaintiff merely restates its proposed legal standard, then redirects the Court's attention to FAC ¶¶ 77-81, contending that "these allegations are sufficient to withstand a motion to dismiss. if [sic] not, further leave to amend should be granted as this is the first time such a claim has been alleged." *See* Doc. No. 46 at 13-16. FAC ¶¶ 78-81 read as follows:

> San Diego County's jail system has the highest mortality rate of the ten largest jail systems in California and the second highest suicide rate among the state's largest jail systems.
>
> The County has yet to provide Plaintiffs [sic] with exact information surrounding this event and the policies implicated by the event. However, in accordance with Federal Rule of Civil Procedure 11(b)(3), Plaintiffs will likely have evidentiary support for these allegations after a reasonable opportunity for further investigation or discovery.
>
> In doing the acts and/or omissions herein alleged, defendants were deliberately indifferent to the serious medical needs of Ms. KARNES, which caused the unnecessary infliction of pain and physical injury on Ms. KARNES, resulting in her devastating injuries. The actions and inactions of the defendants resulted in the violation of her rights under the Eighth Amendment of the United States Constitution.
>
> The aforementioned acts and/or omissions of defendants in violating Ms. KARNES' civil rights were the direct and proximate result of policies, procedures and practices/customs of defendants as alleged herein.

In reply, the County maintains the position established in its moving papers—that Plaintiff supplies insufficient factual allegations necessary to state a cognizable § 1983 claim against it under *Monell*.

Construing all inferences in the light most favorable to Plaintiff, the Court finds that the FAC lacks plausible facts sufficient to state a cognizable § 1983 claim under *Monell*. Notably, Plaintiff's opposition brief, citing to FAC ¶¶ 78-81, *supra*, concedes that the FAC was styled without having reviewed "exact information surrounding this event and the

policies implicated by the event." *See* Doc. No. 46 at 16. Nevertheless, Plaintiff alleges that policies it has neither reviewed, nor expressly identified, "were the direct result and proximate result[,]" and therefore the moving force behind, the constitutional violations allegedly suffered by Plaintiff. *See* Doc. No. 36 at ¶¶ 74-81. The Court finds that these allegations constitute improper conclusions cast in the form of factual allegations. The Court need not, and does not, accept them as true. *Ileto*, 349 F.3d at 1200.

The Court further finds that Plaintiff fails to plausibly allege a pattern of findings which tend to suggest that similar constitutional violations, as those alleged in the FAC, have occurred at the Las Colinas detention facility, or any other detention facility under the County's control. The County argues that Plaintiff's allegation that there was an inadequate plan for her condition does not provide a basis for a federal claim because it is but a single alleged incident of medical malpractice, and medical malpractice will not suffice to support a federal civil rights claim for deliberate indifference to medical needs. *See* Doc. No. 48 (citing *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 525 (9th Cir. 1999)). The Court agrees. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *See Connick v. Thompson*, 563 U.S. 51 at 61 (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). Here, the FAC lacks allegations that the County, or its policymakers, had actual or constructive notice that its policies or practices, with respect to responding to the medical needs of inmates, violate the constitutional rights of inmates at Las Colinas. *Id.*, at 407.

Accordingly, the Court finds that Plaintiff fails to state a cognizable § 1983 (deliberate indifference to medical need) claim against the County, pursuant to *Monell*. The County's motion to dismiss Count Three is **GRANTED**, and the claim is **DISMISSED WITHOUT PREJUDICE**.

//

//

//

**b. Count Four: *Monell* Liability Directed at the County's Failure to Train**

Plaintiff bases Count Four on the County's alleged failure to properly train Las Colinas medical staff to recognize and treat a prisoner's serious medical needs. Plaintiff alleges that "[t]he Las Colinas' [sic] staff was not trained to re-evaluate inmates who have suffered head injuries; or to recognize the signs and triggers of head injuries." *See* Doc. No. 36 at 24. Thus, Plaintiff contends, "[l]ack of sufficient training was a direct cause" of Plaintiff's injuries. *Id*.

"Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (citation omitted).

Counts Three and Four of the FAC, as pled, share identical defects. Specifically, as to Count Four, the FAC lacks non-conclusory allegations that raise Plaintiff's right to relief, as to the County, beyond the speculative level. Indeed, because Plaintiff (1) fails to identify a formal County policy responsible for causing the alleged constitutional violation; (2) fails to allege a pattern of findings of similar constitutional violations required to establish municipal liability for a deliberately indifferent custom or program; and (3) does not allege that a policy-making official personally directed the behavior of any of the Defendants in this case, the Court finds that Plaintiff's allegations do not sufficiently state a deliberate indifference claim arising from the County's failure to properly train Las Colinas medical staff to recognize and treat a prisoner's serious medical needs.

Accordingly, the Court finds that Plaintiff fails to state a claim state a cognizable § 1983 (failure to train) claim against the County, pursuant to *Monell*. The County's motion to dismiss Count Four is **GRANTED**, and the claim is **DISMISSED WITHOUT PREJUDICE**.

**2. Counts Five (Negligence) & Six (Medical Malpractice)**

Defendant County contends that, as a matter of law, Plaintiff cannot state a cognizable negligence or medical malpractice claim against it because, pursuant to California law, the County of San Diego is immune, and no exception to statutory immunity applies in this case. *See* Doc. No. 38 at 9-10 (collecting cases, and noting California's longstanding policy immunizing public entities from tort suits for damages, with few exceptions). In its opposition brief, Plaintiff agrees, as to both issues. *See* Doc. No. 46 at 17-18.

First, with respect Count Five, Plaintiff points out that she would agree with the County's theory for dismissal, but notes that the County's argument is moot because "the COUNTY is not named in the negligence claim, only specific Deputies are." *Id*. at 17. A review of the FAC reveals that Plaintiff is correct. *See* Doc. No. 36 at 25 (asserting Count Five only as to "Defendants SERRA, ROJAS, ORTEGA, MONTESDEOCA and DOES 1-50"). Thus, the County's motion to dismiss Count Five is **DENIED AS MOOT**.

Second, Plaintiff clarifies that asserting Count Six against the County was "a drafting error," and "the County should not have been included[.]" *See* Doc. No. 46 at 18. Accordingly, Plaintiff concurs that "[d]ismissal with prejudice of the COUNTY on this claim should be entered on the record." *Id*. The Court accepts Plaintiff's withdrawal of Count Six, as to the County. The County's motion to dismiss Count Six is, therefore, **DENIED AS MOOT**, and the claim is **DISMISSED WITH PREJUDICE**.

**ii. Motion to Strike**

The County moves to strike from the FAC Plaintiff's inclusion of various case law citations and references to suicide and mortality rates. Specifically, the County isolates paragraphs 11, 12, 62, 63, 64, and 84, arguing that each includes either improper "legal argument" or "conclusions having no place in a complaint because they cannot be admitted or denied as factual allegations[.]" *See* Doc. No. 38-1 at 16.

In opposition Plaintiff contends that striking the subject paragraphs is unwarranted. *See* Doc. No. 46 at 31-32. Specifically, Plaintiff distinguishes her case from the authority

cited by the County in support of its motion, arguing that the difficulty of reading or analyzing her FAC is not compromised by the subject inclusions, as was the case in *Jones v. Kern High Sch. Dist.*, 2008 WL 3850802 (E.D. Cal. 2008). *See* Doc. No. 46 at 31-32. Plaintiff points out that unlike the lengthy, 79 page complaint in *Jones*, which included many case citations, her FAC "has only 96 paragraphs [26 pages], 9 case citations . . . and 1 reference [to prisoner suicide and mortality rates]." *Id*.

In reply, the County maintains the position stated in its moving papers; that "it is appropriate for the court to strike from the FAC all legal argument and case citation allegations." *See* Doc. No. 48 at 9.

Here, the Court finds it appropriate to strike from FAC paragraphs 5, 11, 12, 62, 63, 64, 76, 78, and 84 each case law citation and specific reference to prisoner suicide or mortality rates. Although the Court is mindful that motions to strike are generally disfavored, the Court finds that Plaintiff's inclusion of the subject legal authority adds no material improvement to the quality of Plaintiff's factual allegations against the Defendants in this case. *See generally* Doc. No. 36. The citations are, therefore, immaterial. Furthermore, the Court remains unconvinced (1) how the inclusion of prison suicide statistics would have any possible bearing on the subject matter of this litigation—where Plaintiff does not allege a suicide attempt(s) and where it is uncontested that Plaintiff was assaulted by a fellow inmate and ultimately survived; and (2) that the mortality statistics referenced are causally linked to the County's policies or practices that Plaintiff alleges caused the deprivation of her constitutional rights. The County's motion to strike is **GRANTED**.

**b. Defendant John Serra, M.D.'s Motion to Dismiss, and Strike, Portions of the FAC Pursuant to Rule 12(b)(6) and 12(f)**

**i. Motion to Dismiss**

At issue next are FAC Counts Two, Five, and Six, brought against Dr. Serra. *See* Doc. No. 36. Dr. Serra moves to dismiss each of these Counts, arguing that fatal pleading deficiencies prevent Plaintiff from stating cognizable claims against him. *See generally*

Doc. No. 40. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Dr. Serra's motion to dismiss Counts Two, Five, and Six against him.

**1. Count Two (42 U.S.C. § 1983: Deliberate Indifference to Medical Condition)**

On March 25, 2016, the Court issued an order granting the County's motion to dismiss. *See* Doc. No. 32. Dr. Serra was not yet joined as a Defendant when the March 25th order issued. However, the Court made findings of fact now at issue with respect to Dr. Serra—namely, that, pursuant to the timeline of events alleged in Plaintiff's original complaint, (1) "no actual or constructive knowledge of a serious medical injury existed for which County *or its employees* would know that Plaintiff required immediate medical care[;] (2) "Plaintiff's delay in notifying deputies of her injury militates against the need for immediate medical care[;] and (3) "*the medical staff and deputies* had no reason to know or anticipate that plaintiff could be suffering from a closed-head injury when plaintiff did not present any markers or symptoms of such injury to that point." *See* Doc. No. 32 at 9-10 (emphasis added).

"When a court decides upon a rule of law[,] that decision should continue to govern the same issues in subsequent stages of the same case." *Pepper v. United States*, 131 S. Ct. 1229, 1250 (2011) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Accordingly, the Court finds that because identical issues are raised here, as were addressed in this Court's prior order, the Court must **ADOPT** its prior reasoning with respect to each duplicative issue.

Here, Dr. Serra contends that Plaintiff's § 1983 claim against him, for deliberate indifference to a serious medical condition, should be dismissed with prejudice because, "[b]ased on the clinical signs and symptoms set forth within Plaintiff's FAC (paragraphs 20, 37 and 41 as it pertains to Dr. Serra)[,] there was no reason to know or anticipate that Plaintiff could be suffering from a closed head injury as there were no clinical signs or symptoms to support such an injury." *See* Doc. No. 40-1 at 8-9. After a careful review of the FAC, and the Court's order issued on March 25, 2016, the Court finds that Plaintiff's

deliberate indifference claim, as to Dr. Serra, is duplicative of Plaintiff's deliberate indifference claim previously before the Court on the County's motion to dismiss. *Cf.* Doc. Nos. 32, 36. Accordingly, the Court **ADOPTS** the reasoning articulated in its March 25, 2016 order, and **GRANTS** Dr. Serra's motion to dismiss Count Two, as to him. The claim is **DISMISSED WITH PREJUDICE**.

**2. Count Five (Negligence)**

In her opposition brief, Plaintiff concedes that asserting Count Five against Dr. Serra was a mistake. *See* Doc. No. 46 at 29 ("Plaintiff agrees that DR. SERRA should not have been included in this particular claim . . . Dismissal with prejudice of Dr. SERRA on this claim should be entered on the record."). The Court accepts Plaintiff's withdrawal of Count Five, as to Dr. Serra. Dr. Serra's motion to dismiss Count Five, is, therefore, **DENIED AS MOOT**, and the claim is **DISMISSED WITH PREJUDICE**.

**3. Count Six (Medical Malpractice)**

As the basis for her state law claim for medical malpractice against Dr. Serra, Plaintiff alleges that, on March 13, 2014, while Plaintiff was under Dr. Serra's care, no significant neurologic assessment was performed. *See* Doc. No. 38-1 at ¶ 41. Specifically, Plaintiff alleges that a CT scan was "medically prudent and warranted[,]" but not ordered on that date. *Id*. Dr. Serra moves to dismiss Count Six, with prejudice, contending that "[s]uch allegations are mere conclusions" with insufficient factual support. *See* Doc. No. 40-1 at 11-12.

However, this Court has the discretion to decline or to continue to exercise supplemental jurisdiction over state law claims after federal claims have been dismissed. Under 28 U.S.C. § 1367, a district court may exercise supplemental jurisdiction over state law claims that "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). 28 U.S.C. § 1367(c) also explicitly allows a reviewing court to decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of state law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §§ 1367(c)(1)-(4). This Court finds that 28 U.S.C. § 1367(c)(3) applies because all claims over which this Court has original jurisdiction have been dismissed with prejudice, as to Dr. Serra. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for medical malpractice. *See Naffe v. Frey*, 789 F.3d 1030 (9th Cir. 2015). The Court *sua sponte* **REMANDS** this claim to state court for all further proceedings.

**ii. Motion to Strike**

Dr. Serra moves to strike portions of the FAC praying for exemplary and punitive damages and attorneys' fees, as to him. *See* Doc. No. 40-1 at 11. Dr. Serra contends that the subject portions of the FAC become immaterial "[i]f the court grants Defendant's Motion to Dismiss the second claim for relief against Dr. Serra without leave to amend[.]" *Id*. The Court agrees, and, therefore finds that because Plaintiff cannot state a cognizable § 1983 claim against Dr. Serra for deliberate indifference to serious medical need, Plaintiff's prayer for exemplary and punitive damages, and attorneys' fees, as to Dr. Serra, is sufficiently immaterial. Dr. Serra's motion to strike is **GRANTED**.

**c. Defendant Montesdeoca, Ortega, and Roja's Joint Motion Motion to Dismiss, and Strike, Portions of the FAC Pursuant to Rule 12(b)(6) and 12(f)**

**i. Motion to Dismiss**

At issue last are FAC Counts One, and Two brought against Defendants Montesdeoca, Ortega, and Rojas (the "Deputy Defendants" or the "Deputies"). *See* Doc. No. 36. The Deputies move to dismiss each of these Counts, arguing that fatal pleading deficiencies prevent Plaintiff from stating cognizable claims against them. *See generally*

Doc. No. 43. For the following reasons, the Court agrees, and therefore **GRANTS** the Deputy Defendants' motion to dismiss Counts One and Two against them.

**1. Count One (42 U.S.C. § 1983: Failure to Protect an Inmate from Harm)**

Officials at detention facilities have "a duty to protect prisoners from violence at the hands of other [detainees]." *Byerly v. Deputy Warden*, 246 Fed.Appx 512, 514 (9th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks, ellipsis, and citation omitted)). However, "not . . . every injury suffered by one [detainee] at the hands of another . . . translates into constitutional liability for" detention-facility "officials responsible for the victim's safety." *Id*. (quoting *Farmer*, 511 U.S. at 834). As the Ninth Circuit explained in *Frost v. Agnos*:

> A prison official may be held liable if he acted with deliberate indifference to a substantial risk of serious harm. Mere negligence is not sufficient to establish liability. Rather, the official's conduct must have been wanton, which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official.

152 F.3d 1124, 1128 (9th Cir.1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-04 (1991); *Farmer*, 511 U.S. at 835) (internal citations omitted from block quotation)); *see also Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1242-43 (9th Cir. 2010) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Farmer*, 511 U.S. at 834 (noting that "failure to prevent harm amounts to punishment [only] where detention officials are deliberately indifferent"). Moreover, a prison official cannot be deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The Deputy Defendants move to dismiss Count One, contending that the FAC (1) includes "no allegation that plaintiff informed any of the defendants that she felt threatened by inmate Guerra[;]" and (2) "is devoid of any facts showing any defendant was aware of

a substantial risk of serious harm to plaintiff." *See* Doc. No. 43-1 at 6. Thus, the Deputies conclude, no reasonable inference can be drawn from the alleged facts that Plaintiff faced a substantial risk of serious harm. *Id*. at 6-7 (noting that, according to FAC ¶¶ 24-32, Defendants Rojas, Ortega, and Montesdeoca, were told by Plaintiff, on different occasions, that her injuries were caused by accidentally hitting her face on a door).

In opposition, Plaintiff restates her proposed legal standard, then redirects the Court's attention to FAC ¶¶ 12-21, contending that "these allegations are sufficient to withstand a motion to dismiss. If not, further leave to amend should be granted as this is the first time such a claim has been alleged." *See* Doc. No. 46 at 18-20.

Construing all inferences in the light most favorable to Plaintiff, the Court finds that the FAC lacks plausible facts sufficient to state cognizable § 1983 claims against the Deputy Defendants for failure to protect. Upon review of the entire FAC, including FAC ¶¶ 12-21, the Court notes the absence of any allegations plausibly suggesting that the Deputy Defendants knew that inmate Guerra presented a substantial risk to Plaintiff's health and safety, and, with wonton disregard for such risk, placed Plaintiff and Guerra in sufficient proximity to each other. *See generally* Doc. No. 36. In fact, Plaintiff did not inform jail personnel that she had any personal safety concerns and she never self-reported that she was threatened or assaulted by another inmate. *See* Doc. Nos. 36 at 29, 31. Plaintiff also denied being involved in a fight. *Id*. at 25.As pled, Count One fails to state, and based upon Plaintiff's admissions cannot state, a cognizable § 1983 claim against the Deputy Defendants, on the basis of failure to protect. Accordingly, the Deputy Defendants' motion to dismiss Count One is **GRANTED,** and the claim is **DISMISSED WITH PREJUDICE**.

**2. Count Two (42 U.S.C. § 1983: Deliberate Indifference to Medical Condition)**

With respect to Count Two asserted against the Deputy Defendants, the Court **ADOPTS** its reasoning set forth in Part II(b)(i)(1), *supra*, and finds that Plaintiff cannot plausibly allege that the Deputy Defendants acted deliberately. Indeed, the Court's March 25, 2016 order granting the County's motion to dismiss Plaintiff's original complaint

reflects this Court's finding that the County employees, including "*the medical staff and deputies*" had no reason to know or anticipate that Plaintiff could be suffering from a closed-head injury when Plaintiff presented no indication of such injury at that point. *See* Doc. No. 32 at 9-10 (emphasis added). Thus, the Court finds that Plaintiff does not, and cannot state, a cognizable § 1983 claim against the Deputy Defendants, on the basis of acting deliberately indifferent to a serious medical condition Plaintiff was suffering from. Accordingly, the Deputy Defendants' motion to dismiss Count One is **GRANTED,** and the claim is **DISMISSED WITH PREJUDICE**.

**ii. Motion to Strike**

The Deputies move to strike the same portions of the FAC that the Court struck pursuant the County's motion to strike. *Cf* Doc. Nos. 38, 43. Based on the same reasoning set forth in Section II(a)(ii), *supra*, the Court finds it appropriate to strike the same portions of the FAC, as to the Deputy Defendants. The Deputies' motion to strike is **GRANTED**.

**<u>CONCLUSION AND ORDER</u>**

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant County of San Diego's Motion to Dismiss, and to Strike, Portions of the FAC Pursuant to Rule 12(b)(6) and 12(f), [Doc. No. 38], is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. The County's Motion to Dismiss Count Two (42 U.S.C. § 1983, Deliberate Indifference to a Serious Medical Condition) is **GRANTED**, and the claim is **DISMISSED WITHOUT PREJUDICE**;

   b. The County's Motion to Dismiss Count Four (42 U.S.C. § 1983, Failure to Train) is **GRANTED**, and the claim is **DISMISSED WTHOUT PREJUDICE**;

   c. The County's Motion to Dismiss Count Five (Negligence) is **DENIED AS MOOT**, and the claim is **DISMISSED WITH PREJUDICE**;

d. The County's Motion to Dismiss Count Six (Medical Malpractice) is **DENIED AS MOOT**, and the claim is **DISMISSED WITH PREJUDICE**.

e. The County's Motion to Strike is **GRANTED**. Each case law citation and specific reference to prisoner suicide or mortality rates is **STRICKEN** from FAC paragraphs 5, 11, 12, 62, 63, 64, 76, 78, and 84.

2. Defendant John Serra, M.D.'s Motion to Dismiss, and to Strike, Portions of the FAC Pursuant to Rule 12(b)(6) and 12(f), [Doc. No. 40], is **GRANTED IN PART AND DENIED IN PART** as follows:

a. Dr. Serra's Motion to Dismiss Count Two (42 U.S.C. § 1983, Deliberate Indifference to a Serious Medical Condition) is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**;

b. Dr. Serra's Motion to Dismiss Count Five (Negligence) is **DENIED AS MOOT**, and the claim is **DISMISSED WITH PREJUDICE**;

c. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for medical malpractice against Dr. Serra. The claim is *sua sponte* **REMANDED** to state court for all further proceedings.

d. Dr. Serra's Motion to Strike portions of the FAC praying for exemplary and punitive damages and attorneys' fees, as to him, is **GRANTED**.

3. Defendant Montesdeoca, Ortega, and Roja's Joint Motion Motion to Dismiss, and to Strike, Portions of the FAC Pursuant to Rule 12(b)(6) and 12(f), [Doc. No. 43], is **GRANTED**. Specifically:

a. The Deputy Defendants' Motion to Dismiss Count One (42 U.S.C. § 1983, Failure to Protect from Harm) is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**;

b. The Deputy Defendants' Motion to Dismiss Count Two (42 U.S.C. § 1983, Deliberate Indifference to a Medical Condition) is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**;

c. The Deputy Defendants' Motion to Strike is **GRANTED**. Each case law citation and specific reference to prisoner suicide or mortality rates is **STRICKEN** from FAC paragraphs 5, 11, 12, 62, 63, 64, 76, 78, and 84.

4. The Clerk of Court is directed to enter judgment reflecting the foregoing, and to close the case.

**IT IS SO ORDERED**.

DATED: September 29, 2017

JOHN A. HOUSTON
United States District Judge